UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JODI M. KASHUBA, | : | Civil No. 1:16-cv-01924 |
| Plaintiff, | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | (Chief Magistrate Judge Schwab) |
| NANCY A. BERRYHILL[1] | : | |
| Acting Commissioner of | : | |
| Social Security | : | |
| Defendant. | : | |

**REPORT AND RECOMMENDATION**

**I. Introduction**

This is an action brought under Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying the claim of Plaintiff Jodi Kashuba ("Ms. Kashuba") for disability insurance benefits and supplemental security income under the Social Security Act.

This matter has been referred to the undersigned United States Magistrate Judge to prepare a report and recommended disposition, pursuant to the provisions of 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure.

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and 42 U.S.C. § 405(g), Acting Commissioner Nancy A. Berryhill is automatically substituted as the named defendant in place of the former Commissioner of Social Security.

1

Jurisdiction is conferred on this Court pursuant to 42 U.S.C. §405(g). For the reasons expressed herein, the Court recommends that the Commissioner's final decision be **VACATED**, and **REMANDED** to the Commissioner for a new decision in accordance with this opinion.

## II.  Background and Procedural History

Plaintiff Jodi Kashuba ("Ms. Kashuba") alleges she is disabled due to back injury, knee injury, arthritis, chronic pain, headaches, chest pains, and fibromyalgia. (Admin. Tr. 94; Doc. 6-3 p. 6). Her ailments stem from a motorcycle accident in July of 1997. (Admin. Tr. 57; Doc. 6-2 p. 58).

Ms. Kashuba was born on April 15, 1966 and is an adult individual who resides within the Middle District of Pennsylvania. (Admin. Tr. 52; Doc. 6-2 p. 53). At the time of her hearing, Ms. Kashuba was married and lived with her husband in Pittston, Pennsylvania. (Admin. Tr. 52-53; Doc. 6-2 pp. 53-54). Ms. Kashuba holds a bachelor of arts degree. (Admin. Tr. 53, 156; Doc. 6-2 p. 54, Doc. 6-6 p. 7). From January 2001 through December 2009, Ms. Kashuba worked as the co-director of non-profit organization that provided an anti-drug and alcohol program for children in low income housing developments. (Admin. Tr. 55; Doc. 6-2 p. 56).

On December 11, 2012, Ms. Kashuba filed for Title II disability insurance benefits, alleging disability beginning January 19, 2010. (Admin. Tr. 137; Doc. 6-

5 p. 2). The claim was initially denied on March 13, 2013. (Admin. Tr. 30; Doc. 6-2 p. 31). ALJ Timothy Wing held a hearing on this claim on May 6, 2014. Id.

On June 19, 2014, the ALJ issued an opinion finding Ms. Kashuba was not disabled under the Social Security Act. The ALJ followed the five-step analysis for disability claims under the Social Security Act. At Step One, the ALJ determined that Ms. Kashuba was not engaged in substantial gainful activity from the time of her alleged onset of disability through her last insured date of December 31, 2013. (Admin. Tr. 32; Doc. 6-2 p. 33). At Step Two, the ALJ found Ms. Kashuba had the following five severe impairments: (1) spinal disorder status post compression fracture; (2) cervical degenerative disc disease; (3) degenerative joint disease status post left knee patellofemoral replacement and debridement; (4) myalgia; and, (5) myositis. (Admin. Tr. 32; Doc. 6-2 p. 33). He also found the following three medically determinable but non-severe impairments: (1) thyroid disorder; (2) chronic headaches; and (3) fibromyalgia. (Admin. Tr. 33; Doc. 6-2 p. 34). These were found non-severe by the ALJ because he determined that they did not meet the durational requirements of a severe impairment. (Admin. Tr. 34; Doc. 6-2 p. 35). At Step Three, he determined that Ms. Kashuba's severe impairments did not meet or equal any of the listed impairments. Id.

Between Step 3 and Step 4, the ALJ found Ms. Kashuba possessed the residual functional capacity ("RFC") to perform sedentary work, with the following specifications:

> limited to occupations that require no more than occasional postural maneuvers such as balancing, stooping, crouching, and climbing on ramps and stairs; must avoid occupations that require crawling, kneeling, and climbing on ladders; limited to occupations that require no more than occasional pushing and pulling with the upper and lower extremities; and must avoid concentrated prolonged exposures to environments with temperature extremes, excessive noise and vibration and extreme dampness and humidity.

(Admin. Tr. 34-35; Doc. 6-2 pp. 35-36). At Step Four, the ALJ found that through the date she was last insured, Ms. Kashuba was capable of performing her past relevant work as co-director of a children's outreach non-profit organization. (Admin. Tr. 40; Doc. 6-2 p. 41). The ALJ came to this conclusion by finding that work did not require performance of any activities precluded by her RFC assessment. (Admin. Tr. 40-42; Doc. 6-2 p. 41-43). This adverse finding at Step Four rendered Ms. Kashuba not disabled under the Act and therefore the ALJ did not proceed to Step Five.

The agency Appeals Council denied Ms. Kashuba's request for review on December 16, 2015. (Admin. Tr. 19; Doc. 6-2 p. 20). On September 21, 2016, Ms. Kashuba filed a civil action with this Court seeking review. (Complaint 1-3;

Doc. 1 pp. 1-3). This matter has been fully briefed by the parties and is ripe for decision. (Doc. 9; Doc. 12; Doc. 13).

## III. Legal Standards

### A. Substantial Evidence Review.

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. See 42 U.S.C. §405(g); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F.Supp.2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence."

Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." Leslie v. Barnhart, 304 F.Supp.2d 623, 627 (M.D. Pa. 2003). The question before this Court, therefore, is not whether Mr. Snyder is disabled, but whether the Commissioner's finding that he is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); Burton v. Schweiker, 512 F.Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990)(noting that the scope of review on legal matters is plenary); Ficca, 901 F.Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

**B.      Initial Burdens of Proof, Persuasion, and Articulation for the ALJ.**

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to

last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); see also 20 C.F.R. §404.1505(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §423(d)(2)(A); 20 C.F.R. §404.1505(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or he contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or he was last insured. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §404.1520(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §404.1520(a)(4).

Between Steps Three and Four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the

limitations caused by his or her impairment(s)." Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§404.1520(e), 404.1545(a)(1). In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at Step Two of his or her analysis. 20 C.F.R. §404.1545(a)(2).

At Steps One through Four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. 42 U.S.C. §423(d)(5); 20 C.F.R. §404.1512[2]; Mason, 994 F.2d at 1064.

Once this burden has been met by the claimant, it shifts to the Commissioner at Step Five to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. §404.1512(f); Mason, 994 F.2d at 1064.

---

[2] The version of 20 C.F.R. § 404.1512 effective on the date the ALJ issued her decision in her case has been amended during the pendency of this action. Section (a) of this regulation was not substantively changed, and section (f) was redesignated as section (b)(3) in the new version of 20 C.F.R. § 404.1512. We cite to the version of this regulation that was effective on the date of the ALJ's decision, see 20 C.F.R. § 404.1512(effective Apr. 20, 2015 to Mar. 26, 2017), however, the outcome in this case would be the same under the new version of this regulation.

The ALJ's disability determination must meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 433 (3d Cir. 1999). "Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence. In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 121 (3d Cir. 2000) (internal citations and quotations omitted).

## IV. Discussion

Ms. Kushuba raises three issues on appeal:

(1) Did the ALJ erroneously find her fibromyalgia non-severe?

9

(2) Did the ALJ erroneously assigned little weight to the assessment of the treating physician?

(3) Did the ALJ fail to present a hypothetical question containing all of her credibly established limitations to the VE?

**A. The ALJ Erroneously Determined Ms. Kushuba's Fibromyalgia Was Non-Severe by Not Discussing Relevant Evidence of Record.**

The ALJ aptly described the relevance of fibromyalgia in disability determinations:

> Social Security Ruling 12-2p requires consideration of fibromyalgia in determining whether claimants have medically determinable impairments that are severe, whether those impairments meet or equal any listing, and finally in determining the residual functional capacity. Fibromyalgia syndrome is a chronic musculoskeletal disorder characterized by pain, muscle stiffness, pervasive fatigue, and non-restorative sleep, often with an absence of abnormal diagnostic findings and laboratory tests. Definable tender points are also characteristics of fibromyalgia. A diagnosis of fibromyalgia is usually established under the American College of Rheumatology (ACR) guidelines based on a history of widespread pain and specific pain in at least 11 of the 18 tender point sites on digital palpation. Fibromyalgia may limit an individual's ability to sustain activity on a regular and continuing basis during an eight-hour day, five-day week or equivalent schedule. These considerations have been taken into account in reaching the conclusions herein.

(Admin. Tr. 33; Doc. 6-2 p. 34).

The ALJ found Ms. Kashuba's fibromyalgia to be medically determinable but non-severe. (Admin. Tr. 34; Doc. 6-2 p. 35). In reaching that decision, the ALJ noted that her fibromyalgia did not meet the durational requirements. Id. In order

to be considered in a disability determination, medically determinable physical or mental impairment must have lasted or be expected to last for at least twelve consecutive months. 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1520(b).

Specifically, the ALJ found the following:

> [T]he treatment records do not indicate consistent or ongoing examination findings supportive of such a condition. There is no ongoing indication of widespread pain present . . . . The neurologist records notes the fibromyalgia as part of claimant's medical history, includes it as an assessment but does not indicate any specific care or plan for this impairment.

(Admin. Tr. 34; Doc. 6-2 p. 35). The ALJ also noted that a rheumatologist noted 18/18 tender points at one visit, and that "there is no indication of referral and/or treatment of the fibromyalgia by a specialist." (Admin. Tr. 34; Doc. 6-2 p. 35).

Ms. Kashuba was diagnosed with fibromyalgia on five occasions by her primary care physician (Admin. Tr. 388-91, 393; Doc. 6-10 pp. 8-11, 13), once by her neurologist (Admin. Tr. 556; Doc. 6-12 p. 66), and three times by her rheumatologist (Amin. Tr. 601-02; Doc. 6-14 pp. 4-5). Ms. Kashuba's primary care physician referred her to a rheumatologist. (Admin. Tr. 388; Doc. 6-10 p. 8). The rheumatologist, a specialist, found 18/18 tender points on three separate occasions over a seven month period and provided treatment plan of Neurontin and Lyrica. (Admin. Tr. 601-08; Doc. 6-14 pp. 4-11).

11

The fact that the ALJ stated in the opinion that the rheumatologist found 18/18 tender points during a single visit without discussion of the other two times the rheumatologist found 18/18 tender points leaves this reviewing Court unable to tell whether this "significant probative evidence was not credited or simply ignored." Burnett, 220 F.3d at 121. The same issue of reviewability is duplicated by the fact that the ALJ stated no specialist provided a treatment plan, while the record contains the rheumatologist's treatment plan of prescription nerve pain medication. This error is not harmless, because a severe impairment of fibromyalgia would have weighed on the RFC determination, which would in turn weigh on whether Ms. Kashuba was capable of performing her past work as co-director of a non-profit organization. Accordingly, whether the ALJ considered all of the requisite factors is not supported by substantial evidence, and we will remand for a new decision that takes the factors into account and discusses them in a reviewable manner.

### B. Ms. Kashuba's Remaining Claims.

Because we have found a clear basis for remand, we need not address Ms. Kashuba's remaining arguments. To the extent that any other error(s) occurred, it may be remedied on remand.

## V.     <u>Recommendation</u>

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that Ms. Kashuba's request for a new administrative determination be GRANTED and the Commissioner's final decision denying Ms. Kashuba's application for benefits be VACATED as follows:

1. The Court issue an order remanding this matter to the Commissioner to conduct a new administrative hearing pursuant to sentence four of 42 U.S.C. § 405(g);

2. Final Judgment should be issued by a separate order in favor of Ms. Kashuba and against the Commissioner of Social Security; and,

3. The clerk of court should close this case.

The parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge,

however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Failure to file timely Objections to the foregoing Report and Recommendation may constitute a waiver of any appellate rights.

*S/Susan E. Schwab*
Susan E. Schwab
Chief United States Magistrate Judge

Submitted: October 31, 2017